Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Counsel for Plaintiff Travis Daley*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS DALEY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>SCICLONE PHARMACEUTICALS, INC., JON S. SAXE, FRIEDHELM BLOBEL, NANCY T. CHANG, RICHARD J. HAWKINS, GREGG ANTHONY LAPOINTE, SIMON LI,<br><br>        Defendants. | Case No. 3:17-cv-04563<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Travis Daley ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**INTRODUCTION**

1. Plaintiff brings this action on behalf of himself and the public stockholders of SciClone Pharmaceuticals, Inc. ("SciClone" or the "Company") against SciClone and SciClone's Board of Directors (the "Board" or the "Individual Defendants," as further defined below, and together with the Company "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to affiliates of GL Capital Management GP Limited ("GL Capital"), Bank

of China Group Investment Limited ("BOCGI"), CDH Investments ("CDH"), Ascendent Capital Partners ("Ascendent"), and Boying Investments Limited ("Boying," and collectively with GL Capital, BOCGI, CDH, and Ascendent, the "Buyer Consortium").

2.     On June 8, 2017, SciClone announced that they had entered into a definitive agreement with affiliates of the Buyer Consortium on June 7, 2017 ("Merger Agreement"), under which Silver Biotech Investment Limited ("Parent"), an affiliate of the Buyer Consortium, through its wholly-owned subsidiary, Silver Delaware Investment Limited ("Merger Sub"), will acquire all of the outstanding shares of SciClone in an all-cash transaction (the "Proposed Transaction").  If consummated, SciClone stockholders will receive $11.18 in cash for each share of SciClone common stock that they own ("Merger Consideration").  The Proposed Transaction has a total value of approximately $605 million.

3.     On August 2, 2017, Defendants issued materially incomplete and misleading disclosures in the Form PREM14A Preliminary Proxy Statement (the "Proxy") filed with the SEC in connection with the Proposed Transaction.

4.     The Proxy is deficient and misleading because, *inter alia*, it omits material information about the facts and circumstances that led up to the Proposed Transaction, as well as material information concerning the Company's financial projections, which were prepared by Company management and relied upon by Lazard Frères & Co. LLC ("Lazard"), the Company's financial advisor, who used such information to support its opinion on the fairness of the Proposed Transaction. Without this material information, SciClone stockholders will be asked to vote on the Proposed Transaction based upon materially incomplete and misleading information.

5.     The Proxy is also deficient and misleading because it omits material information relating to whether the non-disclosure agreements SciClone entered into with certain suitors contained standstill provisions which may be operating to restrain superior offers from being made for the Company, and further omits material information pertaining to the Buyer Consortium's communications with SciClone insiders concerning potential continued employment of SciClone's executive officers and directors following the Proposed Transaction, including but not limited to the timing, content, nature, and form of such communications.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

6.      By unanimously authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading.

7.      The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder, as stockholders need such information in order to make a fully-informed decision in determining how to vote on the Proposed Transaction.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin the Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to SciClone's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' violations of federal securities laws and regulations.  Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9.      The Court has personal jurisdiction over each Defendant because each either conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (a) SciClone maintains its headquarters in this District; (b) the conduct at issue took place and had an effect in this District; (c) a substantial portion of the corporate transactions and wrongs complained of herein occurred here; and (d) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

**PARTIES AND RELEVANT NON-PARTIES**

11.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of SciClone.

12.     SciClone is a corporation organized and existing under the laws of the State of Delaware. The Company maintains its principal executive offices at 950 Tower Lane, Suite 900, Foster City, California 94404.  SciClone common stock trades on NASDAQ under the ticker symbol "SCLN."

13.     Defendant Jon S. Saxe ("Saxe") has served as Chairman of the Board since July 2009 and has served as a director of the Company since August 2000.

14.     Defendant Friedhelm Blobel ("Blobel") has served as Chief Executive Officer ("CEO") and a director of the Company since June 2006.

15.     Defendant Nancy T. Chang ("Chang") has served as a director of the Company since September 2013.

16.     Defendant Richard J. Hawkins ("Hawkins") has served as a director of the Company since October 2004.

17.     Defendant Gregg Anthony Lapointe ("Lapointe") has served as a director of the Company since March 2009.

18.     Defendant Simon Li ("Li") has served as a director of the Company since January 2013.

19.     Defendants Saxe, Blobel, Chang, Hawkins, Lapointe, and Li are collectively referred to as "Individual Defendants" and/or the "Board."

20.     Relevant non-party Parent is a company organized and existing under the laws of the Cayman Islands that was formed for the purpose of effectuating the Proposed Transaction.

21.     Relevant non-party Merger-Sub is a Delaware corporation and wholly-owned subsidiary of Parent that was formed for the purpose of effectuating the Proposed Transaction.

22.     Relevant non-party GL Capital is a Greater China investment management group focused on healthcare related investments.

23.     Relevant non-party BOCGI was established in 1984 and is the principal direct investment platform of Bank of China.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

1

2

24.     Relevant non-party CDH is an alternative asset management institution focused on China.

3

4

25.     Relevant non-party Ascendent is a private equity firm focused on Greater China-related investments.

5

26.     Relevant non-party Boying is a limited company wholly owned by Weihang Zhu.

6

## CLASS ACTION ALLEGATIONS

7

8

9

10

11

27.     Plaintiff brings this action individually and as a class action on behalf of all holders of SciClone common stock who are being, and will be, harmed by Defendants' actions described herein (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendants.

12

13

28.     This action is properly maintainable as a class action under the Federal Rule of Civil Procedure 23.

14

15

16

17

18

19

20

29.     The Class is so numerous that joinder of all members is impracticable.  According to the Proxy, as of July 25, 2017, SciClone had 52,191,854 shares of common stock outstanding.  While the exact number of Class members is presently unknown to Plaintiff and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in this Class.  All members of the Class may be identified from records maintained by SciClone or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

21

22

23

24

25

26

27

30.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following: (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Proxy in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if such securities laws violations are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class is entitled to injunctive relief as a result of Defendants' wrongful conduct as alleged herein.

28

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

31.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.  Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

32.     Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in litigation of this nature.

33.     The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

34.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

35.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

36.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

*Company Background*

37.     SciClone is a specialty pharmaceutical company with substantial commercial business in China that focuses on products designed to address issues relating to oncology, infectious diseases, and cardiovascular disorders.  The Company's leading product, Zadaxin, has been approved in over 30 countries.

*The Sale Process*

38.     Through mid-2015, SciClone had confidential discussions relating to potential strategic transactions with various parties.  During this time period, SciClone engaged with Lazard, to serve as its financial advisor.  However, these transactions did not evolve, largely due to formal investigations

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

concerning potential violations of the FCPA conducted by the SEC and the U.S. Department of Justice ("DOJ") which had begun in August 2010.

39.     SciClone reached an agreement in principle for a proposed settlement with the SEC in August 2015 and anticipated resolution with the DOJ would follow shortly thereafter.

40.     In September 2015, the Board authorized SciClone to begin an auction process to determine whether certain offers could be in the best interest of SciClone stockholders.  Shortly thereafter, in October 2015, the Company instructed Lazard to contact 99 potential bidders, including GL Capital, a member of the Buyer Consortium which at the time held approximately 9.6% of SciClone's outstanding common stock.  From late 2015 through mid-2016, of the approximately 99 potential bidders contacted, approximately 47 of these potential bidders entered into non-disclosure agreements.

41.     In September 2015, the Board also created a transaction committee designed to assist and provide management with guidance and facilitate discussions concerning potential strategic transactions with various bidders (the "Transaction Committee").  The Transaction Committee was comprised of Defendant Saxe and Defendant Lapointe.

42.     In February 2016, SciClone announced that a formal and final settlement had been reached with the SEC resolving the investigation concerning potential FCPA violations.  Further, SciClone announced that the DOJ had completed their simultaneous investigation and declined to further pursue any action against the Company.

43.     During the following months, SciClone conducted discussions with potential acquirers, and received interest from a number of them, including a buyer consortium consisting of GL Capital, BOCGI, Jade Park Investments Limited, and ABG Management Limited.  Each potential acquirer at this time, including GL Capital and Party A, declined to proceed with a transaction and the Board determined to cease their active strategic review process in July 2016.

44.     In September 2016, at the Board's direction, Lazard reached out and held discussions with the CEO of Party B, which had previously participated in the auction process.  During these preliminary discussions, Party B's CEO provided a preliminary, non-binding indication of interest which represented an $11.00 per share offer for each share of SciClone common stock.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

45.   On October 2, 2016, following additional discussions with Lazard, Party B submitted a non-binding indication of interest representing an offer price of $12.60 per share.

46.   On October 7, 2016, the Transaction Committee met with Lazard and the Company's outside counsel ("DLA") to discuss the indication of interest received from Party B.  The Transaction Committee then instructed Defendant Blobel to meet with Party B's CEO to further discuss the potential transaction.  On October 11, 2016, Defendant Blobel and Lazard met with Party B's CEO and senior management in China and informed them that SciClone would assist with due diligence and provide any additional information they required.  Party B did not follow-up with any inquiries.

47.   On October 12, 2016, Defendant Blobel met with GL Capital's CEO, Jeffrey Li, for a routine stockholder update meeting in order to discuss publically disclosed information.

48.   On October 20, 2016, Party B informed Lazard that it was no longer interested in a potential transaction with SciClone.  Party B did not provide any reasoning as to how or why this decision was reached.

49.   On November 12, 2016, GL Capital's CEO called to inform Defendant Blobel that a buyer consortium led by GL Capital would be submitting, on an unsolicited basis, a non-binding proposal to acquire SciClone for $11.18 per share.  Later that same day, the Board held a meeting to discuss the potential transaction.

50.   On November 14, 2016, GL Capital publicly disclosed its unsolicited, non-binding proposal through an amendment to its Schedule 13D.  The offer represented a premium of approximately 14% of SciClone stock's closing price on November 11, 2016.  Later that same day, SciClone issued a press release confirming its receipt of the offer.

51.   On November 16, 2016, the Board held a meeting to discuss the non-binding proposal.

52.   On November 23, 2016, SciClone received a draft merger agreement from the buyer consortium represented by GL Capital.  The draft contained a 30 day "go-shop" provision and a break-up fee of approximately 1.5% of the merger consideration for termination which would occur if the Company chose to accept qualified proposals that may be received during the "go-shop" period.

53.   On November 29, 2016, the Board met to discuss the draft merger agreement and considered the offer as well as potentially continuing as a stand-alone company.  Over the following

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

two weeks, SciClone, Lazard, and DLA worked with the buyer consortium represented by GL Capital's financial advisor and responded to due diligence questions.

54.     On December 13, 2013, at the direction of the Board, Lazard reached out to nine parties, six multinational buyers, and three financial buyers, which had previously expressed interest in a potential strategic transaction with SciClone.

55.     On December 14, 2016, the financial advisor of the GL Capital buyer consortium informed SciClone that they could consider increasing their offer to a "best and final" price of $11.48, if new and additional terms were added to the merger agreement.  Such terms included: (i) an exclusion of the reverse break-up fee to be paid to the Company if the consortium were unable to obtain debt financing solely due to changes in applicable regulations and (ii) SciClone repatriating $80 million of its cash to the United States to be used to finance the purchase price.

56.     On December 15, 2016, the Board met to consider this updated offer price and the proposed modifications.  In addition, SciClone representatives and the GL Capital buyer consortium's representatives held a call to discuss the modifications and concerns held by the consortium relating to China's shifting regulatory framework restricting capital outflows.

57.     On December 15, 2016, a Chinese investment bank emailed Defendant Blobel to introduce Party C, a financial buyer based in China, and provided a non-binding indication of interest for $12.00 per share.  Party C indicated that it would submit a formal, non-binding proposal in the following weeks.

58.     On December 17, 2016, the Board met to discuss further the modifications suggested by the consortium led by GL Capital and the informal offer received from Party C.  The Board determined that the exclusion to the breakup fee was unacceptable and instructed Lazard to inform the consortium such, which Lazard did the same day.

59.     On January 12, 2017, Defendant Blobel and Wilson Cheun, SciClone's Chief Financial Officer, met with representatives of Party C to discuss the potential strategic transaction as well as matters concerning further diligence.

60.     On February 7, 2017, SciClone received details from Party C via email which contained a purchase price of $12.00 per share.  Party C indicated that the formal proposal would be submitted

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

later the same week and requested a follow-up meeting be scheduled on February 9 or February 10 in Beijing. The Company determined not to schedule a meeting due to the late notice, the fact that no formal proposal was subsequently received as well as due to the fact that Party C had not entered into a confidentiality agreement with SciClone. Shortly thereafter, Lazard, at the Board's direction, reached out to Party C to determine if they would still like to submit a formal proposal and inquire as to their willingness to enter into a confidentiality agreement. Party C did not submit a formal proposal or follow-up questions.

61.  On February 17, 2017, an amendment to GL Capital's Schedule 13D was filed stating that ABG Management Limited and Jade Park Investments Limited withdrew from the buyer consortium and that Avengers Limited, an affiliate of CDH, and Boying joined the buyer consortium.

62.  On February 24, 2017, SciClone met with Party D, and conducted a full day management meeting. Party D signed a confidentiality agreement, but eventually declined to pursue a transaction.

63.  On March 27, 2017, Defendant Blobel and Lazard met with the GL Capital buyer consortium to discuss financing issues.

64.  On April 10, 2017, SciClone received a letter from GL Capital buyer consortium reaffirming its interest in the proposal it submitted November 14, 2016.

65.  On April 20, 2017, the GL Capital buyer consortium indicated it would be submitting a revised merger agreement which would exclude the previously proposed provision relating to the reverse break-up fee. However, the revision would include a provision extending the termination date for three months so as to provide the buyer consortium with additional time to obtain debt financing, if necessary. It also indicated that the revised merger agreement would not indicate pricing, and thus the $11.48 price would not be included. The revised merger agreement was circulated on April 21, 2017.

66.  On April 28, 2017, the buyer consortium, consisting of GL Capital, BOCGI, CDH, and Boying, submitted a non-binding offer which re-affirmed the proposal received on November 14, 2016, and included a per share offer price of $11.18. The offer stated the proposed price was the "best and final offer." After receiving this offer Lazard reached out to the consortium to discuss the fact that the new offer was lower than the $11.48 informal offer that had previously been discussed. The buyer

consortium's representative stated that this was due to changes in market conditions, including the fact that as of February 17, 2017, SciClone's primary product, Zadaxin, was no longer covered by basic medical insurance in China.

67.     Later on April 28, 2017, the Board met to discuss the non-binding offer and considered the revised merger agreement.  The Board determined to further review the proposal and consider it at a regularly scheduled meeting on May 5, 2017.

68.     On May 5, 2017, the Board met and further discussed the proposal.  During this meeting, the Board considered SciClone's stock price history and changes in China's regulatory framework concerning pharmaceuticals.

69.     On May 9, 2017, the Board met to further discuss the proposal and instructed Lazard to inquire as to whether GL Capital buyer consortium would consider increasing its price.  Lazard inquired as to a potential increase and on May 12, 2017, the consortium reaffirmed that $11.18 was its "best and final" offer.

70.     On May 12, 2017, members of the Board met with Lazard and DLA to discuss the proposal and determined to hold a full Board meeting on May 24, 2017, in order to determine the next appropriate steps to take.

71.     On May 24, 2017, the Board met and instructed DLA to negotiate with the consortium and pursue changes to the merger agreement including: (i) an extension to the go-shop provision from 30 days to 60 days; and (ii) a reduction of the extension period concerning the consortium obtaining debt financing from three months to one month.

72.     On May 26, 2017, the buyer consortium was further modified to include Ascendent. With this addition, the Buyer Consortium now contained five members: GL Capital, BOCGI, CDH, Ascendent, and Boying.

73.     Between May 26 2017 and June 7, 2017, the Buyer Consortium agreed to the extension of the go-shop provision as well as the reduction of the extension period relating to the Buyer Consortium's time period to obtain debt financing.

74.     On May 29, 2017, at the Board's direction, Lazard reached out to ten parties, seven multinational strategic buyers and three financial buyers.  Nine of the parties contacted, including

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

Party B and Party D, declined to review a potential acquisition of SciClone.  One party, Party A, indicated they would conduct internal reviews, but did not submit an indication of interest prior to the signing of the Merger Agreement.

75.     On June 7, 2017, the Board met to discuss the potential transaction with the Buyer Consortium and unanimously determined that the Merger Agreement was fair and in the best interest of SciClone and SciClone's stockholders.  The Board thereafter approved the Merger Agreement and resolved that it be submitted to SciClone's stockholders for consideration.  The Board also instructed Lazard to contact third parties pursuant to the go-shop provision contained in the Merger Agreement.

76.     After the close of the market on June 7, 2017, the Company, Parent, and Merger Sub executed the Merger Agreement and on June 8, 2017, SciClone issued a press release on the matter, which stated the following relevant information:

FOSTER CITY, Calif., June 8, 2017 /PRNewswire/ -- SciClone Pharmaceuticals, Inc. (NASDAQ: SCLN) (the "Company" or "SciClone") and a consortium consisting of entities affiliated with GL Capital Management GP Limited ("GL Capital"), Bank of China Group Investment Limited ("BOCGI"), CDH Investments, Ascendent Capital Partners and Boying (collectively, the "Buyer Consortium") today announced that they have entered into a definitive merger agreement under which the Buyer Consortium will acquire all the outstanding shares of SciClone for $11.18 per share in cash. The transaction will be funded by the Buyer Consortium through a combination of equity financing to be provided by the Buyer Consortium and debt financing, and is not subject to a financing condition. The transaction, which was unanimously approved by SciClone's Board, values the Company at approximately $605 million, on a fully diluted basis, and represents a premium of 11% over SciClone's closing stock price on June 7, 2017 and a premium of 16% over its ten-day volume-weighted average closing stock price. The transaction, which is expected to close this calendar year, is subject to approval by SciClone stockholders and other customary closing conditions.

"The Board has determined that a sale of the Company at this time is the best way to deliver meaningful value to SciClone's stockholders," said Jon S. Saxe, Chairman of SciClone's Board of Directors. "While SciClone has executed well on its growth strategies to date, following continued review of its strategic alternatives, the Board has determined that the challenges of continuing to operate as an independent US-based, publicly traded company in the complex, competitive and increasingly price-sensitive China pharmaceuticals market represent long-term risks to the Company's ability to maintain a strong growth trajectory and to meet its financial objectives. This agreement enables SciClone stockholders to achieve substantial cash value and premium to the Company's recent trading price in the near term and eliminates exposure to long-term risk and uncertainty."

Friedhelm Blobel, Chief Executive Officer of SciClone said, "We believe that SciClone has reached the stage where its long-term future and strategic path forward can best be realized as part of a corporate entity based in and managed from China. We are proud of the company we have built, and believe that the Buyer Consortium

is best positioned to continue growing the business, compete more effectively and invest the necessary resources to further serve our customers and provide high quality medicines to Chinese patients. We want to express our deep appreciation to our customers, partners, collaborators and employees. We are pleased to be able to provide near-term value to our stockholders while ensuring the long-term future of the Company."

"On behalf of the Buyer Consortium, I would like to express my deep appreciation and admiration to the Board and the management of SciClone. They have done an impressive job navigating through China's complex healthcare landscape and built the Company into the solid and successful business it is today," said Jeffrey Li, founder and CEO of GL Capital. "We very much look forward to working with the Company's management and its excellent employees in the near future. With the extensive local knowledge and vast resources brought by the various members of the Buyer Consortium, we are confident the Company will have a bright and promising future for all of its customers, patients, employees, and other stakeholders."

Lazard is serving as exclusive financial advisor to SciClone and DLA Piper LLP (US) is serving as its legal advisor.

Morgan Stanley is serving as financial advisor to the Buyer Consortium and Skadden, Arps, Slate, Meagher & Flom LLP is serving as its legal advisor.

77.     Starting on June 9, 2017, as instructed by the Board, Lazard reached out to third parties to inquire as to whether there was additional interest in pursuing a strategic transaction with SciClone. The "go-shop" provision expired on August 6, 2017.

78.     On June 12, 2017, Party A and Party E, jointly, entered into a confidentiality agreement with SciClone.  As of the date of the Proxy, Party A had continued with its due diligence review but did not provide a new acquisition proposal.

79.     On June 14, 2017, Party C's CEO submitted a preliminary non-binding proposal for $12.00 per share.  Shortly thereafter, Party C entered into a confidentiality agreement with SciClone and continued its due diligence review.  As of the date of the Proxy, Party C had been continuing its due diligence review.  As of the filing of this Complaint, Party C has not made a binding offer.

***The Proxy Misleads SciClone Stockholders by Omitting Material Information***

80.     On August 2, 2017, SciClone filed a materially misleading Proxy with the SEC.  The Proxy is rendered materially misleading by the omission of critical information concerning the process that led up to the execution of the Merger Agreement, including the solicitation and offer review process, Lazard's financial analyses conducted in preparing its fairness opinion, and information regarding potential conflicts of interest faced by SciClone senior management when leading the search for strategic alternatives that ultimately resulted in the execution of the Merger Agreement.  As such,

the Proxy, which recommends that the Company's stockholders vote their shares in favor of the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14d-9.

***Misleading Statements and Omissions Regarding the Sale Process***

81.     The Proxy contains material misstatements and omissions regarding the solicitation and negotiation process taking place in the lead up to the Merger Agreement.  For example, the Proxy glosses over multiple negotiations and discussions that SciClone management had with potential suitors concerning potential strategic transactions with vague statements such as, "[t]he Company held due diligence meetings with various interested parties throughout the end of 2016 and through mid-2017." Such language is unnecessarily vague and misleading as to whether any of these conversations resulted in actual interest or proposals from counterparties.  The Proxy should disclose the number of parties with whom the Company held due diligence meetings, whether such parties were financial or strategic, and the level of interest exhibited by such parties.  The omission of this information renders the Proxy materially misleading as to the level of interest potential suitors showed in acquiring the Company.

82.     Similarly, the *Background of the Merger* section merely mentions that Lazard was instructed to reach out to 99 potential bidders, yet fails to disclose whether such parties were strategic or financial.

83.     Despite the relatively few details on the results of these conversations in the background section, the Proxy discloses in the *Reasons for the Merger; Recommendation of the Board of Directors* section, that "approximately 47" of the "approximately 99" potential bidders contacted entered into non-disclosure agreements.  The Proxy simply states that "none of [the 47] made a final binding offer." This statement fails to indicate whether the 47 potential bidders had submitted preliminary proposals, indications of interest, or other preliminary bids.

84.     This information is particularly material, because without it stockholders will be unable to determine whether there were and may still be other potential strategic or financial partners that would be willing to provide greater consideration than that offered by the Proposed Transaction.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

*Misleading Statements and Omissions Regarding the Non-Disclosure Agreements*

85.     The Proxy discloses that SciClone entered into non-disclosure agreements with "approximately 47" potential bidders between late 2015 and mid-2016.  In addition, the Proxy indicates that SciClone entered into various confidentiality agreements between mid-2016 and mid-2017; however, the exact number of agreements entered into is unclear.  While the Proxy expressly states that the Company entered into numerous non-disclosure/confidentiality agreements with potential bidders, the Proxy fails to disclose whether such agreements contained standstill provisions, and the terms of such standstill provisions.  In particular, the Proxy is silent as to whether any standstill provisions in the non-disclosure/confidentiality agreements SciClone with potential suitor counterparties are currently operating to restrain the counterparties from making a superior offer or topping bid for the Company, and/or if they contained don't-ask-don't-waive provisions or other terms that contractually prohibit the counterparties from seeking a waiver of any standstill provision terms.  Without this information, the Company's stockholders are being misled to believe that all of these counterparties have been and are currently free to make a superior offer to acquire the Company.

*Potential Conflicts Facing Company Management and Directors*

86.     The Proxy is actively misleading regarding employment discussions taking place during the period leading up to the execution of the Merger Agreement.

87.     The Proxy states that "no employment agreements or similar arrangements were or have been implemented in connection with discussions with the Buyer Consortium."  However, the Proxy also states, that, "[i]n accordance with the merger agreement, after the effective time . . . officers of the Company immediately prior to the effective time will continue their employment as the officers of the surviving corporation . . . ."

88.     The foregoing statements relating to the continued employment of SciClone executives are at best misleading, as there is no information as to the content, nature, timing nor parties involved in discussions that led to their continued employment pursuant to the Merger Agreement.  Moreover, given that the Buyer Consortium is comprised of various private equity and investment management buyers, rather than being a strategic purchaser, the likelihood is very high that the Buyer Consortium

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

pursued communications regarding its intention to retain management, as similarly situated buyers often do in such transactions.

89.    Contrary to the disclosure in the Proxy, the continuing employment of SciClone management after the close of the Proposed Transaction appears to be a foregone conclusion.  In the press release announcing the Proposed Transaction, Defendant Blobel, SciClone's CEO, stated, "[w]e are pleased to provide near-term value to our stockholders while ensuring the long-term future of the Company."  Similarly, in the same press release, Jeffrey Li, Founder and CEO of GL Capital, stated, "We very much look forward to working with the Company's management and its excellent employees in the near future."

90.    Despite these explicit and clear public statements by Defendant Blobel and Jeffrey Li, the Proxy actively misleads SciClone stockholders into believing that **no discussions** regarding continued employment of management took place.  While formal agreements on this issue may not have been reached, it is clear that some communications took place.

91.    This information is particularly material with respect to Defendant Blobel, as he was instrumentally involved in the negotiations with the Buyer Consortium throughout the sale process. For example, Defendant Blobel met with Jeffrey Li for a "routine" shareholder update just one month prior to GL Capital submitting an "unsolicited" proposal to acquire SciClone.  Any communications— even one-sided written indications in proposals or other written communications—concerning post-merger employment between the Buyer Consortium or its affiliates and Defendant Blobel, or any other SciClone officers, directors, or employees, during the sale process, would be material to a stockholder's decision as to whether to vote in favor of the Proposed Transaction.  Such communications give rise to substantial undisclosed conflicts of interests.

92.    Statements that "no employment agreements or similar arrangements were or have been implemented in connection with discussions with the Buyer Consortium" are rendered materially misleading by the omission of material facts regarding the timing and nature of employment communications and negotiations that undoubtedly occurred.

93.    The failure to disclose the content and timing of such discussions materially misleads SciClone stockholders as to the potential conflicts of interest faced by Company management and the

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

Board in supporting the merger.  The omitted information relating to the timing, content, and parties involved in these communications concerning the retention of SciClone's management and directors would significantly alter the total mix of information that Defendants have disclosed to solicit stockholder approval of the Proposed Transaction.  The conflicts of interests created and fostered by such communications would affect the stockholders' perception and analysis of the entire process and the ultimate fairness of the Proposed Transaction.  Thus the statements in the Proxy, including the statements indicating that no agreements had been entered into with the Buyer Consortium concerning continued employment, are rendered materially misleading by these omissions.

### *Lazard's Financial Analysis*

94.     The Proxy describes Lazard's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Lazard's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, SciClone's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Lazard's fairness opinion in determining whether or not to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to SciClone's stockholders.

95.     With respect to Lazard's *Sum-of-the-Part's Discounted Cash Flow Analysis*, the Proxy fails to disclose unlevered free cash flow for each of the products and product candidates analyzed.

96.     With respect to Lazard's *2018 Selected Companies Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for the companies observed by Lazard in its analysis.

97.     With respect to Lazard's *2017 Selected Companies Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for the companies observed by Lazard in its analysis.

98.     With respect to Lazard's *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples for each of the selected comparable transactions.  The disclosure of such multiples is necessary because they are a crucial element of these analyses, as the analysis is based on comparison and relative valuation.  Without such disclosure, stockholders are unable to determine whether the range of multiples selected by Lazard reflects appropriately comparable transactions to the

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

Proposed Transaction. Failure to disclose this information renders the statements in the Proxy made by Lazard pertaining to the fairness of the Proposed Transaction misleading.

99. With respect to Lazard's *Premia Paid Analysis*, the Proxy fails to disclose the number of transactions analyzed, the corresponding premiums, nor the high, low, mean, and median premia for the transactions chosen for the analysis.

100. Without the foregoing omitted information, the Company's stockholders are being misled as to the reliability of and basis for Lazard's fairness opinion.

***Misleading Statements and Omissions Regarding the Company's Financial Projections***

101. The Proxy fails to disclose material information concerning the Company's financial projections relied upon by Lazard in preparing its fairness opinion.

102. The Proxy fails to disclose unlevered free cash flow, as relied upon in Lazard's *Sum-of-the-Parts Discounted Flow Analysis*.

103. Defendants' failure to provide SciClone's stockholders with the foregoing material information renders the financial projections and analyses depicted in the Proxy materially incomplete and misleading, and constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder.

***Misleading Statements and Omissions Regarding the Go-Shop Period***

104. The Proxy fails to disclose the status of discussions with Party A (joined by Party E), who expressed interest in acquiring SciClone during the "go-shop" period. The Proxy states that Party A joined by Party E, had expressed interest in acquiring the Company and entered into a confidentiality agreement on June 12, 2017, nearly two months prior to the expiration of the "go-shop" period. However, as to the status of Party A's interest, the Proxy merely states that Party A is continuing to conduct its due diligence review. Given that nearly two months have passed since Party A expressed interest and entered into a confidentiality agreement, it appears that the Proxy omits additional discussions that undoubtedly occurred with Party A.

105. Similarly, the Proxy states that Party C submitted a preliminary non-binding proposal to acquire the Company for $12.00 per share on June 14, 2017, and shortly thereafter entered into a confidentiality agreement. As with Party A's interest, the Proxy merely states that Party C is continuing

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

to conduct its due diligence review of SciClone.  Also in line with the Proxy's discussion relating to Party A, the Proxy appears to omit additional discussions that undoubtedly occurred with Party C. Conversations with Party C are especially material due to the fact that it submitted a preliminary non-binding proposal with an offer price 7.3% higher than the consideration offered under the Proposed Transaction.

106.    With respect to both of the foregoing situations, given that the Proxy was filed on August 2, 2017, the "go-shop" provision did not expire until August 6, 2017, and as of August 9, 2017, the Company has not released any supplemental disclosures concerning these situations, SciClone has clearly failed to provide stockholders with an update as to the status of both Party A's and Party C's interest in acquiring the Company.

## CLAIMS FOR RELIEF

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act, and SEC Rule 14a-9 Promulgated Thereunder, Against the Individual Defendants and SciClone

107.    Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

108.    The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  SciClone is liable as the issuer of these statements.

109.    The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

110.    The omissions and misstatements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

111.    The Individual Defendants were aware of their duty to disclose this information, and yet omitted such at least recklessly or negligently.  The material information described above that was omitted from the Proxy takes on actual significance in the minds of SciClone's stockholders in reaching their decision whether to vote in favor of the Proposed Transaction.  Absent disclosure of this material information prior to the vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

112.    The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

113.    By reason of the foregoing, Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

114.    Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

115.    Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

116.    The Individual Defendants acted as controlling persons of SciClone within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of SciClone and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

117.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

118.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy.

119.    By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

120.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff and the Class rescissory damages;

D.    Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.    Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934

well as Rule 14a-9 promulgated thereunder;

       F.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's

attorneys' and experts' fees; and

       G.     Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

    Plaintiff respectfully requests a trial by jury on all issues so triable.


Dated: August 9, 2017               **LEVI & KORSINSKY, LLP**

                  By:  */s/ Rosemary M. Rivas*
                      Rosemary M. Rivas
                      44 Montgomery Street, Suite 650
                      San Francisco, CA 94104
                      Telephone: (415) 291-2420
                      Facsimile: (415) 484-1294

                      *Counsel for Plaintiff Travis Daley*

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(A) AND 20(A) OF THE
SECURITIES EXCHANGE ACT OF 1934



30 Broad Street, 24th Floor
New York, NY 10004
T:212-363-7500
F:212-363-7171
www.zlk.com

**CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

I, Travis Daley , declare as to the claims asserted under the federal securities laws, as follows:

1. I have reviewed the Complaint and authorized its filing.

2. I did not purchase the securities that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation.

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. I currently hold shares of SciClone Pharmaceuticals Inc. My purchase history is as follows:

| Purchase Date | Stock Symbol | Shares Transacted | Price Per Share |
|---|---|---|---|
| 03/31/2017 | SCLN | 200 | 9.80 |
|  |  |  |  |
|  |  |  |  |

5. During the three years prior to the date of this Certification, I have not participated nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

6. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed this August 8, 2017, at piermont, NH.

Name: Travis Daley

Signed: